Slip Op. 25-11

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **HOA PHAT STEEL PIPE CO., LTD.,** | |
| Plaintiff, | |
| v. | |
| **UNITED STATES,** | **Before: Timothy M. Reif, Judge** |
| Defendant, | **Consol. Court No. 23-00248** |
| and | |
| **ATLAS TUBE INC.; BULL MOOSE TUBE COMPANY; MARUICHI AMERICAN CORPORATION; SEARING INDUSTRIES; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC; VEST INC.; AND NUCOR TUBULAR PRODUCTS INC.,** | |
| Defendant-Intervenors. | |

## OPINION AND ORDER

[Granting plaintiff's motion for judgment on the agency record and remanding for Commerce to accept plaintiff's initial questionnaire responses into the record and to reconsider Commerce's determination regarding plaintiff's ability to participate in the certification process.]

Dated:  January 27, 2025

Daniel L. Porter and Ana Maria Amador Gil, Curtis, Mallet-Prevost, Colt & Mosle LLP, of Washington, D.C., argued for plaintiff Hoa Phat Steel Pipe Co., Ltd.  With them on the briefs was Katherine R. Afzal.

Kristin E. Olson, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for defendant United States.  With

her on the brief were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director and <u>Franklin E. White, Jr.</u>, Assistant Director.  Of counsel on the brief was <u>JonZachary Forbes</u>, Office of Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

<u>Jeffrey D. Gerrish</u>, Schagrin Associates, of Washington, D.C., argued for defendant-intervenors Atlas Tube Inc.; Bull Moose Tube Company; Maruichi American Corporation; Searing Industries; Vest Inc.; and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC.  With him on the brief were <u>Roger B. Schagrin</u> and <u>Nicholas C. Phillips</u>.

<u>Alan H. Price</u>, <u>Robert E. DeFrancesco III</u>, <u>Jake R. Frischknecht</u> and <u>Kimberly A. Reynolds</u>, Wiley Rein LLP, of Washington, D.C., for defendant-intervenor Nucor Tubular Products Inc.

Reif, Judge:  This action concerns the final affirmative determinations ("final determinations") by the U.S. Department of Commerce ("Commerce") of circumvention of the antidumping duty ("AD") and countervailing duty ("CVD") orders on light-walled rectangular pipe and tube ("LWRPT") from Korea, Taiwan and China.  *Light-Walled Rectangular Pipe and Tube from the Republic of Korea: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 77,266 (Dep't of Commerce Nov. 9, 2023); *Light-Walled Welded Rectangular Carbon Steel Tubing from Taiwan: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 77,274 (Dep't of Commerce Nov. 9, 2023); *Light-Walled Rectangular Pipe and Tube from the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 88 Fed. Reg. 77,283 (Dep't of Commerce Nov. 9, 2023).  In the circumvention inquiries, Commerce denied or granted in part the fourth, fifth and sixth requests of plaintiff Hoa Phat Steel Pipe Co., Ltd. ("plaintiff") for extension of time to file plaintiff's responses to Commerce's initial questionnaires ("questionnaire responses").

Memorandum from Commerce Re Rejection of Hoa Phat Initial Questionnaire Response (Nov. 17, 2022) ("Rejection Mem."), KPR 116, TPR 109, CPR 118.[1] Commerce then rejected as untimely plaintiff's questionnaire responses. *Id.* Because Commerce concluded that plaintiff "failed to provide timely information in the form and manner requested," Commerce based its circumvention analysis for plaintiff on the facts available. Issues and Decision Memorandum for the Final Affirmative Circumvention Determination (Nov. 2, 2023) ("IDM") at 17, KPR 223, TPR 219, CPR 236.[2] Commerce then determined that an adverse inference was warranted because plaintiff "failed to cooperate by not acting to the best of its ability." *Id.* In applying adverse facts available ("AFA"), Commerce concluded that plaintiff "produced or exported LWRPT" and that "the criteria for finding circumvention with respect to [plaintiff]" were met. *Id.* As part of Commerce's application of AFA, Commerce determined also that plaintiff was not eligible to certify that specific entries of merchandise were not manufactured using hot-rolled steel ("HRS") from Korea, Taiwan or China. *Id.* at 21; Preliminary Decision Memorandum for the Circumvention Inquiry on the Antidumping Duty Order (Apr. 6, 2023) ("PDM") at 5-6, KPR 147, TPR 140, CPR 160.

Plaintiff challenges (1) Commerce's decision to reject as untimely plaintiff's questionnaire responses and (2) Commerce's application of AFA to exclude plaintiff from

---

[1] The court adopts the method used by parties when citing to the record. "KPR" refers to the record in the Korea proceeding, "TPR" refers to the record in the Taiwan proceeding and "CPR" refers to the record in the China proceeding.

[2] Citations to the PDM and IDM will cite to the page number of the PDM and IDM in the Korea proceeding, for ease of reference.

participation in the certification process.  *See* Pl.'s Br. in Supp. of its Mot. for J. on the Agency R. ("Pl. Br."), ECF No. 41.

For the reasons that follow, the court remands Commerce's final affirmative findings of circumvention.

## BACKGROUND

On May 17, 2022, domestic interested parties filed with Commerce requests for circumvention inquiries to determine whether imports of LWRPT completed in Vietnam using HRS inputs from Korea, Taiwan and China were circumventing AD and CVD orders on LWRPT from China, Korea and Taiwan.  Domestic Interested Parties' Request for Circumvention Inquiry (May 17, 2022), KPR 1, TPR 1, CPR 1.

On August 4, 2022, Commerce published initiation notices for simultaneous inquiries to determine whether imports of LWRPT from Vietnam were circumventing the AD and CVD orders on LWRPT from China, Korea and Taiwan.  Initiation of Circumvention Inquiries on the Antidumping and Countervailing Duty Orders (Aug. 4, 2022), KPR 27, TPR 17, CPR 25.

On August 30, 2022, Commerce selected as mandatory respondents two companies: plaintiff and Vina One Steel Manufacturing Corp. ("Vina One"). Memorandum from Commerce Re Respondent Selection (Aug. 30, 2022), KPR 39, TPR 34, CPR 38.  On September 6, 2022, Commerce issued to the two mandatory respondents Commerce's initial questionnaires.  Circumvention Inquiry Initial Questionnaire (Sept. 6, 2022), KPR 43, TPR 35, CPR 39.  The initial questionnaires contained 15 pages (plus four appendices), consisted of 55 questions and requested data with respect to purchases of plaintiff and its affiliates of HRS for a period of five

years, from January 1, 2017, through December 31, 2021.  *See id.*  Commerce set the deadline for September 20, 2022, giving respondents 14 days to respond to the initial questionnaires.  *Id.* at 1.

The following day, on September 7, 2022, plaintiff filed a pro se letter requesting a six-week extension of time until November 1, 2022, to file its responses to the entire questionnaires.  Hoa Phat's Extension Request for Submission of Responses to Circumvention Inquiry Initial Questionnaire (Sept. 7, 2022), KPR 45, TPR 39, CPR 41.  Plaintiff explained in that letter that the additional time would allow plaintiff to "collect data and information from its database and unaffiliated suppliers and prepare the response for the period of five years."  *Id.* at 1.

On September 14, 2022, Commerce granted plaintiff's request in part and extended the deadline by one week for a new deadline of September 27, 2022.  Letter from Commerce Re Hoa Phat Extension Request (Sept. 14, 2022), KPR 50, TPR 41, CPR 45.

On September 21, 2022, plaintiff filed its second request for an extension of time, seeking a one-week extension of time only with respect to question 46 and appendix IV of the questionnaires.  Hoa Phat's Request for Extension of Initial Questionnaire (Sept. 21, 2022), KPR 57, TPR 48, CPR 53.  Plaintiff explained that the extension was necessary for two principal reasons.  First, as to question 46, the question requested information concerning the purchases of raw materials of not only plaintiff but also its affiliates, and that one of plaintiff's affiliates was "unable to respond with the information until September 28, 2022."  *Id.* at 2.  Second, plaintiff stated that responding to appendix IV, which pertained to factors of production, was "very complex and time-and [sic]

resource-intensive" and involved a high volume of information and "complex calculations." *Id.*

On September 23, 2022, Commerce issued a memorandum to all interested parties addressing certain extension requests and also requests to modify reporting requirements. Memorandum from Commerce Re Response to Modification and Extension Requests (Sept. 23, 2022), KPR 59, TPR 50, CPR 55. In the memorandum, Commerce granted all parties a one-week extension to 5:00 pm ET on October 4, 2022. *Id.* at 3. Also in that memorandum, Commerce stated: "We note that although Hoa Phat's request for a one-week extension pertained only to Question 46 and Appendix IV (Factors of Production) of the IQ, because we are granting a one-week extension to all interested parties, Hoa Phat's response to all sections of the IQ is due no later than 5:00 p.m. ET, October 4, 2022." *Id.* at 4.

On September 30, 2022, plaintiff filed its third request for extension of time, asking for a three-day extension to October 7, 2022, to file its responses to the entire initial questionnaire.[3] Hoa Phat's Request for Extension of Initial Questionnaire (Sept. 30, 2022), KPR 62, TPR 53, CPR 58. In that letter, plaintiff stated that the extension of time was necessary because "[p]reparation of such a large volume of data is very time- and resource-intensive." *Id.* at 2. Commerce granted the extension in full, setting the new deadline at 5:00 pm ET on October 7. Letter from Commerce Re Hoa Phat Third Extension Request (Oct. 3, 2022), KPR 65, TPR 56, CPR 61.

---

[3] In the extension request of September 30, plaintiff stated incorrectly that the then-current deadline for the initial questionnaires was October 3. *See* Hoa Phat's Request for Extension of Initial Questionnaire (Sept. 30, 2022) at 1, KPR 62, TPR 53, CPR 58.

On October 5, 2022, plaintiff filed its fourth[4] extension request, seeking an additional week to file its responses. Hoa Phat's Request for Extensions of the Initial Questionnaire (Oct. 5, 2022), KPR 67, TPR 58, CPR 63. Plaintiff cited among other reasons the volume of information requested, which "cover[ed] the company's corporate structure and affiliations, sales, business operations of the company and its affiliates, and production information." *Id.* at 2. Plaintiff stated also that counsel had become ill and had not yet fully recovered. *Id.* at 3. Plaintiff explained in addition that counsel was also representing mandatory respondents in other proceedings before Commerce with looming deadlines. *Id.* For those reasons, plaintiff sought an extension until October 14.[5] *Id.* at 3-4.

On October 6, 2022, Commerce denied plaintiff's request. Letter from Commerce Re Hoa Phat Fourth Extension Request (Oct. 6, 2022) ("Commerce Response to Pl. Fourth Extension Request"), KPR 69, TPR 60, CPR 65. Commerce stated: "Because Commerce must conduct these circumvention inquiries within time limits required by U.S. law, Commerce is denying Hoa Phat's extension request." *Id.* at 2.

That day, Commerce spoke by phone with plaintiff's counsel. Rejection Mem. at 3. In that phone conversation, plaintiff's counsel stated that she was not certain that the

---

[4] Plaintiff stated incorrectly in this extension request that it was plaintiff's third extension request. It was plaintiff's fourth. *See* Hoa Phat's Request for Extensions of the Initial Questionnaire (Oct. 5, 2022) at 2, KPR 67, TPR 58, CPR 63.

[5] Also on October 5, 2022, Vina One requested an extension of time until October 14, 2022, because "the time presently permitted is simply inadequate." Vina One's Fourth Extension Request for Response (Oct. 5, 2022) at 1, KPR 66, TPR 57, CPR 62.

responses could be filed by the 5:00 pm deadline on October 7. *Id.* Commerce responded that counsel should begin filing its responses early. *Id.*

At approximately 12:30 pm on October 7, 2022, counsel for plaintiff contacted Commerce for clarification on filing the response in multiple segments. *Id.* In that conversation, Commerce once again recommended that counsel begin filing its responses as soon as possible, as the deadline was only hours away. *Id.* Counsel repeated that plaintiff would not be able to meet the 5:00 pm deadline and sought a one-business day extension. *Id.*

Then, at 1:30 pm, counsel for plaintiff again contacted Commerce. *Id.* Soon thereafter, plaintiff submitted to Commerce another extension request. Hoa Phat's Request for Extension of the Initial Questionnaire (Oct. 7, 2022), KPR 71, TPR 62, CPR 67. In that request, plaintiff asked that Commerce extend the deadline to 10:00 am, Tuesday, October 11. *Id.* at 2. The reason for the requested extension was the large volume of the submissions and the need to convert using "OCR" and "flatten"[6] the responses, which counsel stated would take several hours. *Id.* Plaintiff concluded: "Granting this reasonable, short extension will allow us to file the complete response in a timely fashion and manage any difficulties encountered during the OCR, document flattening, and filing processes." *Id.* at 2-3.

At approximately 2:30 pm, Commerce contacted plaintiff's counsel to inquire as to the reasons that counsel needed more time to submit plaintiff's questionnaire

---

[6] "OCR" stands for "optical character recognition" and refers to converting a scanned PDF page into a searchable format. Rejection Mem. at 6, n.6. To "flatten" a PDF document means to remove transparency information and convert images to a format that a printer or scanner can read. *Id.* at 6, n.7.

responses.  Rejection Mem. at 3.  According to Commerce, counsel for plaintiff stated that extending the deadline to midnight on October 7 would give plaintiff sufficient time to submit the questionnaire responses.  *Id.*

At approximately 3:11 pm, Commerce issued a letter extending the deadline for plaintiff to submit the questionnaire responses from 5:00 pm to 11:59 pm on October 7. *Id.* at 4; Letter from Commerce Re Hoa Phat Fifth Extension Request (Oct. 7, 2022) ("Commerce Response to Pl. Fifth Extension Request"), KPR 72, TPR 63, CPR 68. Commerce declined plaintiff the requested one-business day extension because Commerce was "obliged to conduct th[e] circumvention inquiry within time limits required by U.S. law."  Commerce Response to Pl. Fifth Extension Request at 2.  In that letter, Commerce stated in reference to the telephone conversation with plaintiff's counsel:  "Based on a conversation with the undersigned, this will provide sufficient time to address any OCR, document flattening, and filing process issues."  *Id.*

However, this final extension did not prove sufficient for plaintiff.  At approximately 11:46 pm, counsel for plaintiff submitted its sixth extension request. Rejection Mem. at 4; Hoa Phat's Request for Extension of the Initial Questionnaire (Oct. 12, 2022) ("Pl. Sixth Extension Request"), KPR 83, TPR 74, CPR 79.  This request was submitted with the incorrect case segment listed on the document.  Pl. Sixth Extension Request at 1-2.  The request explained that counsel continued to experience difficulty with OCR and flattening of documents and that, "despite Herculean efforts," plaintiff did not expect to complete the filing by the 11:59 pm deadline.  *Id.*, Ex. 2 at 2.  Plaintiff cited also the volume of the information, covering multiple affiliates and spanning five years, which plaintiff stated was "an enormous effort that the company has accomplished

within the deadlines set by Commerce." *Id.* Plaintiff specified that the "problems that [it] encountered" on that day were "technical in nature." *Id.* The letter request stated also that "the client completed their response and sent all documents to counsel well in advance of the deadline." *Id.*, Ex. 2 at 3. As a result, plaintiff's counsel requested that Commerce deem plaintiff's submissions timely "even in the wee hours of the night." *Id.* Because counsel filed the extension request in the incorrect case segment, counsel received a denial on October 11, 2022. *Id.* at 1; Rejection Mem. at 6.

Plaintiff did not complete filing by the 11:59 pm deadline on October 7. Rejection Mem. at 4-5. However, plaintiff did complete filing in all three inquiries before 8:30 am on the following business day, which was Tuesday, October 11.[7] *Id.* In the Taiwan inquiry, plaintiff began submitting its response at 11:57 pm on October 7, and completed submission on Saturday, October 8. *Id.* at 4. In the Korea inquiry, plaintiff began submitting its response at 11:47 pm on October 7, and completed submission on Monday, October 10. *Id.* In the China inquiry, plaintiff began submitting its response at 11:15 pm on October 7, and completed submission on Saturday, October 8.[8] *Id.* at 5.

---

[7] Commerce was closed on Monday, October 10, in observance of Columbus Day.

[8] The "one-day lag rule" allows a party to submit only a business proprietary version of a document by the deadline with a notice that bracketing of business proprietary information is not final for one business day after date of filing. 19 C.F.R. § 351.303(d)(2)(v). The party then has one extra business day to double-check its designations of confidential information and then to file a final confidential submission together with a redacted public version. *Id.* § 351.303(c)(2)(i)-(iii). The party may make no changes to the final submission other than adjusting bracketing and removing the notice about bracketing not being final. *Id.* § 351.303(c)(2)(ii). The court notes that plaintiff completed filing its BPI final versions and public versions before 5:00 pm on October 11. *See* Rejection Mem. at 4-5.

Consol. Court. No. 23-00248                                                              Page 11

On October 7, 2022, the other mandatory respondent, Vina One, timely submitted its response to Commerce's initial questionnaire.  IDM at 15.

On November 17, 2022, Commerce issued a memorandum in which Commerce: (1) concluded that plaintiff did not "establish[] good cause to have extended the deadline beyond the 11:59 p.m. deadline," even assuming that the sixth extension request had been filed in the correct case segment; and (2) rejected plaintiff's questionnaire responses.  Rejection Mem. at 7.

On November 29, 2022, plaintiff requested that Commerce reconsider its decision to reject plaintiff's initial questionnaire responses.  Hoa Phat's Request for Reconsideration re Initial Response (Nov. 29, 2022) ("Pl. Reconsideration Request"), KPR 119, TPR 112, CPR 121.  On December 13, 2022, Commerce denied plaintiff's request.  Letter from Commerce Denying Hoa Phat's Request for Reconsideration (Dec. 13, 2022), KPR 121, TPR 115, CPR 128.

On April 12, 2023 — 183 days after plaintiff's final requested deadline of October 11, 2022, and 146 days after Commerce issued the rejection memorandum — Commerce issued the preliminary determinations.  *See, e.g.*, *Light-Walled Rectangular Pipe and Tube from the Republic of Korea: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 22,002 (Dep't of Commerce Apr. 12, 2023); PDM.  Commerce preliminarily determined to base its circumvention analysis for plaintiff on facts available with an adverse inference "because Hoa Phat failed to provide timely information in the form and manner requested, and significantly impeded this circumvention inquiry."  PDM at 5.  In the PDM, Commerce stated also that "by failing to provide the requested information in a

timely manner, Hoa Phat failed to cooperate by not acting to the best of its ability by not complying with a request for information." *Id.* Commerce concluded for that reason that "an adverse inference is warranted, in selecting from among the facts otherwise available." *Id.* After applying AFA, Commerce reached three conclusions with respect to plaintiff: (1) plaintiff produced LWRPT subject to the circumvention inquiry that was subsequently imported into the United States and the criteria for finding circumvention had been met; (2) the production process of plaintiff was "representative of the experience of other producers of LWRPT in Vietnam" warranting a "country-wide determination" to "prevent further circumvention" by "non-examined producers"; and (3) importers and exporters could certify that "specific entries of LWRPT" were "not manufactured using" Korea-, Taiwan- or China-origin HRS, but entries of LWRPT produced and/or exported by plaintiff were not eligible for certification. *Id.* at 16-17.

On May 4, 2023, plaintiff submitted its administrative case brief, in which plaintiff argued that Commerce abused its discretion in denying plaintiff's extension requests and that Commerce lacked statutory authority to deny plaintiff access to the certification process. Hoa Phat's Set One Case Brief (May 4, 2023), KPR 165, TPR 160, CPR 180. On July 26, 2023, parties held a hearing via videoconference. Hearing Transcript, KPR 210, TPR 205, CPR 223.

On November 2, 2023, Commerce issued its IDM for the final affirmative circumvention determinations of the AD and CVD orders on LWRPT from Korea, Taiwan and China. IDM. On November 9, 2023, Commerce issued the final determinations. *See, e.g.*, *Light-Walled Rectangular Pipe and Tube from the Republic of Korea: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 Fed.

Reg. 77,266 (Dep't of Commerce Nov. 9, 2023).  Commerce did not modify the

conclusions that it reached in the PDM, stating:  "We have determined, based on AFA,

that imports of LWRPT produced or exported by Hoa Phat are circumventing the *Order*

and are subject to cash deposits as outlined in the accompanying *Federal Register*

notice."  IDM at 25.  Specifically with respect to plaintiff, Commerce concluded that:  (1)

its denial of plaintiff's extension request of October 7, 2022, was not an abuse of

discretion; and (2) Commerce had the statutory authority to deny plaintiff a certification

process.[9]  *Id.* at 14-26.  As to (2), Commerce stated that the "decision to bar an

uncooperative respondent from the certification process is an agency practice affirmed

by the CIT, is not impermissibly punitive, and minimizes the impact of AFA findings on

parties not found to be circumventing, while ensuring that Commerce's AFA finding

encourages cooperation, consistent with Commerce's established practice."  *Id.* at 21.

---

[9] In the PDM, Commerce stated with respect to certification:

> In order to administer this preliminary country-wide affirmative determination of circumvention, Commerce has established importer and exporter certifications that provide for specific entries of LWRPT to not be subject to suspension of liquidation or the collection of cash deposits pursuant to this preliminary country-wide affirmative determination of circumvention if the merchandise was not manufactured using [Korea-, Taiwan- or China-origin HRS] . . . .  Accordingly, companies can certify as to whether their products are subject to suspension of liquidation or the collection of cash deposits, based on the requirements and process described in the accompanying *Federal Register* notice.

PDM at 17.

"Where no certification is provided for an entry, and AD/CVD orders from [the] three countries (China, Korea, or Taiwan) potentially apply to that entry," Commerce will "instruct [U.S. Customs and Border Protection] to suspend the entry and collect cash deposits at the rates applicable to the AD and CVD orders on LWRPT" from Korea, Taiwan and China.  *See, e.g.*, *Light-Walled Rectangular Pipe and Tube from the People's Republic of China: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 88 Fed. Reg. 21,985, 21,986 (Dep't of Commerce Apr. 12, 2023).  Commerce added:

> U.S. entries of inquiry merchandise made on or after August 4, 2022, that are ineligible for certification based on the failure of Hoa Phat to cooperate . . . shall remain subject to suspension of liquidation until final assessment instructions on those entries are issued, whether by automatic liquidation instructions, or by instructions pursuant to the final results of an administrative review.

*Id.*

On November 29, 2023, plaintiff filed three complaints, each corresponding to one of the three circumvention inquiries.  Complaint, ECF No. 6.  On March 22, 2024, the court granted the motion of defendant-intervenors Atlas Tube Inc., Bull Moose Tube Company, Maruichi American Corporation, Searing Industries, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, Vest Inc. and Nucor Tubular Products Inc. (collectively, "defendant-intervenors") to consolidate the three actions.  Order, ECF No. 35.

On April 25, 2024, plaintiff filed its motion for judgment on the agency record, asking that the court remand to Commerce with instructions that it: (1) accept plaintiff's initial questionnaire responses into the record of the circumvention proceedings; and (2) reconsider its determination regarding plaintiff's ability to participate in the certification process.  Pl. Br.

On December 11, 2024, the court held oral argument.  Oral Arg., ECF No. 55; Oral Arg. Tr., ECF No. 56.

## JURISDICTION AND STANDARD OF REVIEW

28 U.S.C. § 1581(c) grants to this Court "exclusive jurisdiction of any civil action commenced under section 516A or 517 of the Tariff Act of 1930."  Section 516A of the Tariff Act of 1930, 19 U.S.C. § 1516a(a)(2)(B)(vi),[10] in turn provides for judicial review of "[a] determination by the administering authority as to whether a particular type of merchandise is within the class or kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order."

---

[10] Further citations to the Tariff Act of 1930 are to Title 19 of the U.S. Code, 2018 edition.

The court will hold unlawful any determination, finding or conclusion found "to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." *Id.* § 1516a(b)(1)(B)(i).

Substantial evidence constitutes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," but it requires "more than a mere scintilla." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).

For a reviewing court to "fulfill [its] obligation" to determine whether a determination of Commerce is supported by substantial evidence and in accordance with law, Commerce is required to "examine the record and articulate a satisfactory explanation for its action." *CS Wind Viet. Co. v. United States*, 832 F.3d 1367, 1376 (Fed. Cir. 2016) (quoting *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013)); *see also Risen Energy Co. v. United States*, 46 CIT __, __, 570 F. Supp. 3d 1369, 1376 (2022).

Further, "the Court will not disturb an agency determination if its factual findings are reasonable and supported by the record as a whole, even if there is some evidence that detracts from the agency's conclusion." *Shandong Huarong Gen. Corp. v. United States*, 25 CIT 834, 837, 159 F. Supp. 2d 714, 718 (2001) (citing *Heveafil Sdn. Bhd. v. United States*, 25 CIT 147, 149 (2001)), *aff'd sub nom. Shandong Huarong Gen. Grp. Corp. v. United States*, 60 F. App'x 797 (Fed. Cir. 2003). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Altx, Inc. v. United*

*States*, 370 F.3d 1108, 1116 (Fed. Cir. 2004) (quoting *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984)).

Finally, "[i]t is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962); *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 539 (1981)).

## DISCUSSION

### I.  Whether Commerce abused its discretion or acted arbitrarily in rejecting plaintiff's questionnaire responses

The court concludes that Commerce's decision to reject plaintiff's questionnaire responses was an abuse of discretion. For that reason, the court remands to Commerce with instructions to consider plaintiff's questionnaire responses in the circumvention inquiries.

### A.  Legal Framework

19 C.F.R. § 351.301(a) requires that Commerce specify in its request to an interested party for a response to a questionnaire "[t]he time limit for the response; the information to be provided; the form and manner in which the interested party must submit the information; and that failure to submit the requested information in the requested form and manner by the date specified may result in use of the facts available under section 776 of the Act and § 351.308."

Section 351.302(b) provides that "[u]nless expressly precluded by statute, the Secretary may, for good cause, extend any time limit established by this part."

Subparagraph (c) states that "[b]efore the applicable time limit established under this part expires, a party may request an extension pursuant to paragraph (b) of this section. . . . The request must be in writing, in a separate, stand-alone submission, filed consistent with § 351.303, and state the reasons for the request."

Section 351.302(d) governs Commerce's "[r]ejection of untimely filed or unsolicited material." Subparagraph (d)(1)(i) states: "Unless the Secretary extends a time limit under paragraph (b) of this section, the Secretary will not consider or retain in the official record of the proceeding[] [u]ntimely filed factual information, written argument, or other material that the Secretary rejects." *See also id.* § 351.301(c)(1). Section 351.302(d)(2) requires that Commerce provide, "to the extent practicable, written notice stating the reasons for rejection."

"Commerce has discretion both to set deadlines and to enforce those deadlines by rejecting untimely filings." *Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, 36 CIT 98, 122, 815 F. Supp. 2d 1342, 1365 (2012) (citing *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1206-07 (Fed. Cir. 1995)). This Court has held that "[s]trict enforcement of time limits and other requirements is neither arbitrary nor an abuse of discretion when Commerce provides a reasoned explanation for its decision." *Maverick Tube Corp. v. United States*, 39 CIT __, __, 107 F. Supp. 3d 1318, 1331 (2015). "But [Commerce's] discretion is not absolute." *Grupo Acerero S.A. de C.V. v. United States*, 48 CIT __, __, 698 F. Supp. 3d 1320, 1332 (2024). "[A]bsent constitutional constraints or extremely compelling circumstances," the court "will defer to the judgment of [the] agency regarding the development of the agency record." *Dongtai Peak Honey Indus. Co. v. United States*, 777 F.3d 1343, 1351 (Fed. Cir. 2015).

The U.S. Court of Appeals for the Federal Circuit (the "Federal Circuit") and this Court have also stated that "a deadline-setting regulation that 'is not required by statute may, in appropriate circumstances, be waived and must be waived where failure to do so would amount to an abuse of discretion." *Cambria Co. v. United States*, 48 CIT __, __, 705 F. Supp. 3d 1369, 1377 (2024) (quoting *NTN Bearing Corp.*, 74 F.3d at 1207).

"An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Consol. Bearings Co. v. United States*, 412 F.3d 1266, 1269 (Fed. Cir. 2005) (quoting *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005)).

## B.    Analysis

The question before the court is whether Commerce abused its discretion in rejecting as untimely plaintiff's questionnaire responses.

Plaintiff asserts that Commerce abused its discretion in rejecting plaintiff's untimely questionnaire responses.  First, plaintiff argues that the burden placed on Commerce as a result of plaintiff's late filing was outweighed by "[t]he impairment to the accuracy of Commerce's determination" that resulted from the exclusion of plaintiff's questionnaire responses.  Pl. Br. at 17.  Second, plaintiff contends that Commerce could not permissibly reject plaintiff's untimely filing while also extending Commerce's own deadlines to issue the preliminary and final determinations.  *Id.* at 20-21.  According to plaintiff, this differential treatment demonstrates that "Commerce's approach to Hoa Phat and the broader proceeding . . . was an abuse of discretion and fundamentally unfair."  *Id.* at 1.  Third, plaintiff asserts that Commerce's decision to deny or grant in

part plaintiff's final three extension requests was unsupported by substantial evidence. *Id.* at 24-25. Fourth, plaintiff argues that Commerce's refusal to accept plaintiff's minimally untimely questionnaire responses was inconsistent with Commerce practice. *Id.* at 26-29.

The court concludes for two reasons that in the specific circumstances of this case Commerce abused its discretion in rejecting plaintiff's questionnaire responses.

### 1.    Commerce's rejection of plaintiff's questionnaire responses and exclusion of plaintiff from the certification process

In the Rejection Memorandum, Commerce rejected plaintiff's submission because, according to Commerce, plaintiff "did not make a good faith effort to submit its questionnaire responses in a timely manner." Rejection Mem. at 7. In reaching that decision, Commerce cited that plaintiff: (1) did not begin filing its responses "until just minutes before the deadline"; (2) requested a one week extension in its second extension request to file in response to only question 46 and appendix IV of the questionnaire; (3) and "stated in a conversation at 2:30 p.m. with Commerce that only a few additional hours would be sufficient to resolve their internal technical challenges and complete the filing." *Id.* at 5-7.

In the PDM, Commerce preliminarily determined to base "its circumvention analysis for Hoa Phat on the facts available" because "Hoa Phat failed to provide timely information in the form and manner requested, and significantly impeded" the circumvention inquiries. PDM at 4-5. In addition, Commerce preliminarily concluded that "by failing to provide the requested information in a timely manner, Hoa Phat failed to cooperate by not acting to the best of its ability" and for that reason determined that "an adverse inference is warranted." *Id.* at 5. As AFA, Commerce determined that

plaintiff "produced and/or exported LWRPT subject to [the inquiries] and . . . that the criteria for finding circumvention with respect to Hoa Phat have been met." *Id.* Also as AFA, Commerce determined that plaintiff "is not eligible to certify that specific entries of merchandise were not manufactured using" HRS from Korea, Taiwan and China. *Id.* at 5-6. Commerce did not modify any of these conclusions in the final determinations. *See* IDM at 14-26.

Plaintiff argues that Commerce abused its discretion when it refused to consider plaintiff's questionnaire responses filed prior to the first business day after the deadline and nearly 400 days before Commerce's final determinations. Pl. Br. at 17. For the reasons that follow, the court concludes that Commerce did abuse its discretion.

19 C.F.R. § 351.302(d)(1)-(2) require that Commerce "not consider . . . [u]ntimely filed factual information" and states that Commerce "will reject such information." "Commerce has broad discretion to establish its own rules governing administrative procedures, including the establishment and enforcement of time limits." *Yantai Timken Co. v. United States*, 31 CIT 1741, 1755, 521 F. Supp. 2d 1356, 1370-71 (2007) (quoting *Reiner Brach GmbH & Co. v. United States*, 26 CIT 549, 559, 206 F. Supp. 2d 1323, 1334 (2002)).

However, it is well-established that "a regulation which is not required by statute may, in appropriate circumstances, be waived and must be waived where failure to do so would amount to an abuse of discretion." *NTN Bearing Corp.*, 74 F.3d at 1207; *Cambria*, 48 CIT at __, 705 F. Supp. 3d at 1377-78 (holding that Commerce abused its discretion in not waiving its "deadline-setting regulation" where the respondent inadvertently "submitted its [questionnaire] response five hours after" a nonstandard

deadline and "forty-five days before the *Preliminary Results*"); *Leco Supply, Inc. v. United States*, 47 CIT __, __, 619 F. Supp. 3d 1287, 1307 (2023).

In *Cambria*, Commerce rejected plaintiff's second supplemental questionnaire response submitted inadvertently five hours after the 10:00 am deadline and 45 days before the preliminary determination. 48 CIT at __, 705 F. Supp. 3d at 1375-76. Commerce rejected also plaintiff's subsequent request to refile the submission, concluding that plaintiff "did not demonstrate the extraordinary circumstances necessary to grant an untimely extension request." *Id.* at __, 705 F. Supp. 3d at 1375; *see* 19 C.F.R. § 351.302(c). There, the Court stated that Commerce "failed to weigh the relevant facts," and that Commerce "'must' waive its extraordinary circumstance standard when 'failure to do so would amount to an abuse of discretion.'" *Cambria*, 48 CIT at __, 705 F. Supp. 3d at 1378 (quoting *NTN Bearing Corp.*, 74 F.3d at 1207). Similarly, the facts and circumstances underlying Commerce's rejection of plaintiff's questionnaire responses offer significant support for the conclusion that Commerce "failed to weigh the relevant facts" by not waiving § 351.302(d) when it appears to have been warranted.

To start, Commerce's reliance on "time limits required by U.S. law," Commerce Response to Pl. Fourth Extension Request, in denying plaintiff's fourth and fifth extension requests was "an unreasonable judgment in weighing [the] relevant factors." *Consol. Bearings Co.*, 412 F.3d at 1269.

This Court has held previously that Commerce's reliance on statutory deadlines is an insufficient basis to reject a respondent's request for extension of time where "there [was] no record evidence" that granting the requested extensions "would have

delayed the issuance of the Final Determination." *Celik Halat ve Tel Sanayi A.S. v. United States*, 46 CIT __, __, 557 F. Supp. 3d 1348, 1359 (2022); *see also Ajmal Steel Tubes & Pipes Indus. LLC v. United States*, Slip Op. 22-121, 2022 WL 15943670, at *4 (CIT Oct. 28, 2022) ("Commerce must consider the serious consequences it rests upon parties in the light of the allowances it gives itself."); *Grupo Acerero*, 48 CIT at __, 698 F. Supp. 3d at 1335 ("Commerce's concern with finality rings hollow when one considers it would be nearly three months and three supplemental questionnaires [for the other mandatory respondent] before Commerce issued the Preliminary Results."). In *Celik Halat*, the Court noted that plaintiff — a respondent in an antidumping investigation — had made repeated, timely requests to extend the deadline to file its response to certain sections of the initial questionnaire, and that Commerce, as in the instant case, "was somewhat parsimonious in granting those requests." *Celik Halat*, 46 CIT at __, 557 F. Supp. 3d at 1359. Then, plaintiff requested an additional four-day extension, which Commerce denied due to "statutory deadlines." *Id.* at __, 557 F. Supp. 3d at 1358. The Court stated that Commerce's reliance on "statutory deadlines" in denying the four-day extension was "open to question" because, had Commerce granted the request, Commerce "still would have had 47 days to issue timely the Preliminary Determination." *Id.* at __, 557 F. Supp. 3d at 1359.

This Court's reasoning in *Celik Halat* applies with even greater force in these circumvention inquiries. Contrary to AD and CVD investigations and reviews, the statute does not impose on Commerce in a circumvention inquiry a hard deadline to issue the final determination. *Compare* 19 U.S.C. § 1673d(a)(1), *with id.* § 1677j(f). Commerce has established by regulation certain deadlines to issue the final

determination in a circumvention inquiry, but Commerce itself failed to adhere to those deadlines and extended the instant inquiries far beyond that contemplated by the statute and Commerce's regulations.  For that reason, Commerce's reliance on "time limits required by U.S. law" — regulatory, not statutory, time limits to which Commerce itself failed to adhere — to support Commerce's decision to deny plaintiff's extension requests and thereby reject plaintiff's questionnaire responses constituted an abuse of discretion.

19 U.S.C. § 1677j(f) provides that Commerce "shall, to the maximum extent practicable, make the determinations under this section within 300 days from the date of the initiation of a countervailing duty or antidumping circumvention inquiry under this section."

In 19 C.F.R. § 351.226(e), Commerce set out by regulation time limits to issue the preliminary determination and the final determination in a circumvention inquiry. Section 351.226(e)(1) requires that Commerce issue the preliminary determination no later than 150 days after the date of publication of the notice of initiation and allows Commerce to extend that deadline "by no more than 90 additional days."  Then, the regulation requires that Commerce issue the final determination "no later than 300 days from the date of publication of the notice of initiation."  *Id.* § 351.226(e)(2).  However, if Commerce determines that the inquiry is "extraordinarily complicated and additional time is necessary to issue a final circumvention determination, then [Commerce] may extend the 300-day deadline *by no more than 65 days*."  *Id.* (emphasis supplied).

Commerce's initial deadline to issue the preliminary determinations was January 3, 2023 — 81 days after the October 14 date requested in plaintiff's fourth extension

request and 84 days after the October 11 date requested in plaintiff's fifth and sixth extension requests.  Memorandum from Commerce Re Extension of Preliminary Determinations in Circumvention Inquiries (Dec. 9, 2022), KPR 120, TPR 114, CPR 127.  However, Commerce later extended that deadline twice before issuing the preliminary determinations on April 12, 2023 — 11 days after the regulatory deadline in § 351.226(e)(1).  *Id.*; Memorandum from Commerce Re Second Extension of Preliminary Determinations in Circumvention Inquiries (Mar. 31, 2023), KPR 145, TPR 138, CPR 158; PDM.

Then, Commerce twice extended the deadline to issue the final determinations. In the first such extension, Commerce relied on its authority under § 351.226(e)(2) to extend the deadline "by no more than 65 days" to issue the final determination in a circumvention inquiry and granted itself an additional 65 days.  Memorandum from Commerce Re Extension of Deadline for Issuing Final Determinations in Circumvention Inquiries (May 15, 2023), KPR 179, TPR 173, CPR 192.  Then, Commerce once again extended its deadline to issue the final determinations beyond the time limit prescribed by Commerce's regulation, this time invoking Commerce's authority under § 351.302 to extend any deadline "for good cause."  Memorandum from Commerce Re Extension of Deadline for Issuing Final Determinations in Circumvention Inquiries (July 20, 2023), KPR 209, TPR 204, CPR 222.  As in *Celik Halat*, there is no indication in the record that granting plaintiff's fourth, fifth or sixth requests for extension of time would have delayed the issuance of the final determinations.

Further, Commerce's decision in this case had far-reaching consequences, an additional consideration in assessing whether there has been an abuse of discretion.

In the circumstances of the instant circumvention inquiries, by rejecting plaintiff's questionnaire response and excluding plaintiff from the certification process, Commerce "attached a consequence that was grossly disproportionate to the mistake that was made," and for that reason, abused its discretion. *Artisan Mfg. Corp. v. United States*, 38 CIT 682, 697, 978 F. Supp. 2d 1334, 1347 (2014).

In *Artisan Manufacturing*, this Court held that Commerce abused its discretion in rejecting plaintiff's "quantity and value" questionnaire response filed before 9:00 am on the first business day following the due date. *Id.* at 699, 978 F. Supp. 2d at 1348-49. There, Commerce rejected the untimely filed questionnaire response and applied AFA to plaintiff. *Id.* at 687-88, 978 F. Supp. 2d at 1339-40. As AFA, Commerce assigned to plaintiff the country-wide CVD rate of 76.53%. *Id.* at 684, 978 F. Supp. 2d at 1337. The Court concluded that Commerce abused its discretion in rejecting the questionnaire response and applying to plaintiff the country-wide rate because, based on a review of the record: (1) the filing of the response one business day after the deadline "could not have delayed the investigation in any meaningful way"; and (2) "[t]he consequence Commerce attached" in applying the country-wide rate "was particularly severe." *Id.* at 694-95, 697, 978 F. Supp. 2d at 1345, 1347.

Similarly in the instant case, and as stated above, there is no indication in the record that "acceptance of [plaintiff's] filing could have interfered" with or "delayed" the

instant circumvention inquiries.[11]  *Id.* at 695, 978 F. Supp. 2d at 1345.  Like in *Artisan Manufacturing*, plaintiff completed the filing prior to the beginning of the first business day following Commerce's deadline.  *Id.* at 694-695, 978 F. Supp. 2d at 1345; Rejection Mem. at 4-6.  As stated above, plaintiff completed its filing 184 days before Commerce issued its preliminary determinations in the circumvention inquiries.  In addition, plaintiff completed filing the BPI final versions and public versions of the questionnaire responses before 5:00 pm on October 11, which was earlier even than the other mandatory respondent Vina One.  *See* Pl. Reconsideration Request at 13.  Therefore, accepting plaintiff's questionnaire responses would have been inconsequential to Commerce's conducting of the investigation.  *Artisan Mfg.*, 38 CIT at 694, 978 F. Supp. 2d at 1345.

Also as in *Artisan Manufacturing*, Commerce's decision to exclude plaintiff from the certification process can fairly be characterized as "particularly severe."  *Id.* at 697, 978 F. Supp. 2d at 1347.  All other Vietnamese exporters were able to participate in the certification process, including Vina One, which did not submit the BPI final versions

---

[11] At oral argument, defendant and defendant-intervenor asserted repeatedly that whether the untimely filing impeded or delayed an investigation or review is not a relevant factor in determining whether Commerce abused its discretion, citing the Federal Circuit's decision in *Dongtai Peak Honey Indus. Co. v. United States*, 777 F.3d 1343 (Fed. Cir. 2015).  Oral Arg. Tr. at 41:25-43:2.  However, as described *infra* Section I.B.2, *Dongtai Peak* is inapposite to this case.  Moreover, this Court has continued to consider Commerce's "interest in finality" in cases similar to the one before the court. *Grupo Acerero S.A. de C.V. v. United States*, 48 CIT __, __, 698 F. Supp. 3d 1320, 1335 (2024) ("However, Commerce's interest in finality nearly three months before releasing the Preliminary Results was not just at a nadir; it was nearly zero."); *Celik Halat ve Tel Sanayi A.S. v. United States*, 46 CIT __, __, 557 F. Supp. 3d 1348, 1359 (2022); *Bebitz Flanges Works Priv. Ltd. v. United States*, 44 CIT __, __, 433 F. Supp. 3d 1309, 1326 (2020) (concluding in that case that "Commerce struck the proper balance between finality and accuracy" in rejecting untimely submissions and denying extension requests).

and public versions of its questionnaire responses until after plaintiff.  Commerce's

application of AFA "cannot be 'punitive, aberrational, or uncorroborated'" and should

"reflect[] the seriousness of the non-cooperating party's misconduct."  *BMW of N. Am.*

*LLC v. United States*, 926 F.3d 1291, 1301 (Fed. Cir. 2019) (quoting *F.lli De Cecco Di*

*Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000)).

The record demonstrates that each of plaintiff's extension requests was timely and that

plaintiff was diligent in communicating to Commerce the challenges that plaintiff faced in

meeting Commerce's October 7 deadline to submit its questionnaire responses across

the three circumvention inquiries.  Given that plaintiff's submission of the questionnaire

responses prior to 8:30 am on the following business day had no apparent impact on

Commerce's ability to conduct the circumvention inquiries, such a consequence was

"grossly disproportionate to the mistake that was made."[12]  *Artisan Mfg.*, 38 CIT at 697,

978 F. Supp. 2d at 1347.

Consequently, Commerce's decision to reject plaintiff's questionnaire responses

was an abuse of discretion.

    **2.    Application of the preamble to 19 C.F.R. § 351.302 to plaintiff's final extension request of October 7, 2022**

Finally, the preamble to 19 C.F.R. § 351.302 and decisions of this Court

demonstrate that Commerce has an established practice of extending automatically a

---

[12] Defendant asserts in its briefing that Commerce's decision to exclude plaintiff from the certification process cannot be considered punitive because Commerce explained in the IDM "that '[a]n uncooperative respondent retains the right, and has the opportunity, to participate in a future review [of the relevant order] and, thus, to remedy its uncooperative status and gain eligibility to participate in the certification regime."  Def. Br. at 31 (alterations in original) (quoting IDM at 33).  However, in the circumstances of these inquiries and in light of the foregoing analysis, the court does not find this explanation persuasive.

deadline to 8:30 am the following business day where Commerce is unable to respond to a timely extension request before the deadline to submit a response has expired.[13]

In 2013, Commerce issued a new final rule modifying and clarifying certain aspects of Commerce's regulations addressing the extension of time limits. *Extension of Time Limits*, 78 Fed. Reg. 57,790 (Dep't of Commerce Sept. 20, 2013). In addressing the comments of interested parties, Commerce stated in the preamble:

> Concerning when the time limit expires, if a submission is due on Monday, December 2, 2013, for example, the submission must be received by 5:00 p.m. Eastern Time on that date. If a party requests an extension of that time limit, the party's extension request must be received before 5:00 p.m. on Monday, December 2, 2013, or it will be considered untimely. On the other hand, if the Department specifies that a submission is due on Monday, December 2, 2013, at 12:00 noon, the party's extension request must be received before 12:00 noon on Monday, December 2, 2013, or it will be considered untimely.
>
> Parties should be aware that the likelihood of the Department granting an extension will decrease the closer the extension request is filed to the applicable time limit because the Department must have time to consider the extension request and decide on its disposition. Parties should not assume that they will receive an extension of a time limit if they have not received a response from the Department. *For Submissions that are due at 5:00 p.m., if the Department is not able to notify the party requesting the extension of the disposition of the request by 5:00 p.m., then the submission would be due by the opening of business (8:30 a.m.) on the next work day.*

---

[13] As this Court has observed, this practice has never been codified by regulation even though "[i]n the real world, such a last-minute extension request is virtually certain to obtain at least a 15 1/2-hour extension for completing a filing." *Oman Fasteners, LLC v. United States*, Slip Op. 23-17, 2023 WL 2233642, at *5 (CIT Feb. 15, 2023).

*Id.* at 57,792 (emphasis supplied).[14]

The instructions to the initial questionnaires referenced this practice also and indicated that the practice exists to accommodate respondents that face technical challenges when filing on the day of the deadline:

> Scenario 2: I experienced difficulties yet was able to file an extension request right before the deadline. However, it is now after 5:00 pm on the due date, and I still haven't received a response.

> If you could not meet the deadline because of ACCESS filing difficulties *or other technical issues*, you automatically get until 8:30 am the next business day to file your submission.

Pl. Reconsideration Request, Ex. 1 (emphasis supplied).

In the IDM, Commerce addressed plaintiff's invocation of the preamble's automatic extension and concluded for two reasons that the practice did not apply to plaintiff's circumstances. First, Commerce stated that the practice applied only to deadlines of 5:00 pm. IDM at 16. Second, Commerce determined that the preamble "does not speak to a scenario where (as here) Commerce acted on a timely extension

---

[14] Elsewhere in the preamble, Commerce elaborated on the reason for the modification:

> Prior to the modification, the Department frequently encountered the situation in which a party filed an extension request so close to the time limit that the Department did not have the opportunity to respond to the request before the time limit expires. These last-minute extension requests often resulted in confusion among the parties, difficulties in the Department's organization of its work, and undue expenditures of Departmental resources, which impeded the Department's ability to conduct AD and CVD proceedings in a timely and orderly manner. After consideration of the comments, and as discussed below, the Department considers that an extension request is untimely if it is filed after the applicable time limit expires.

*Extension of Time Limits*, 78 Fed. Reg. 57,790, 57,791 (Dep't of Commerce Sept. 20, 2013).

request before 5:00 p.m. and a filer sought a further extension minutes before the extended filing deadline" of 11:59 pm on that day.  *Id.*

Commerce's decision not to apply to plaintiff's circumstances the practice as reflected in the preamble was unreasonable.  Specifically, this practice exists to accommodate respondents in precisely plaintiff's circumstances: where Commerce is unavailable or unable to respond to a timely extension request that was filed by a respondent facing technical challenges prior to a deadline.  *See Oman Fasteners, LLC v. United State*s, Slip Op. 23-17, 2023 WL 2233642, at *5 (CIT Feb. 15, 2023) ("[I]t is an abuse of discretion for Commerce to require a showing of 'extraordinary circumstances' to support a retroactive extension request . . . where . . . the filing is completed after 5:00 p.m. but prior to 8:30 a.m. the following work day—that is, when the filing is completed within the automatic window that Commerce's rulemaking comment response authorizes.").

In plaintiff's sixth and final request for an extension of time — filed prior to the 11:59 pm deadline — plaintiff reiterated the difficulty in filing information from five affiliates covering several years of data.  Pl. Sixth Extension Request at 2.  Moreover, plaintiff added that it now faced additional challenges that were "solely technical and due to the strain on computers to process in the format required by ACCESS (principally the OCR and flattening process)," which "[took] longer than expected."  *Id.* at 2-3.

Commerce did not respond to this extension request prior to the 11:59 pm deadline.  Plaintiff continued to file its responses throughout the weekend and completed its filings across all three inquiries prior to 8:30 am on the following workday.  Rejection Mem. at 4-5.  In the context of this case, the court does not find a meaningful

basis for Commerce to draw the conclusion it did on the basis of a distinction between the instant deadline of 11:59 pm — as opposed to a deadline at 5:00 pm.  Commerce was unavailable to respond to plaintiff's timely extension request.  In addition, that Commerce had previously granted in part plaintiff's extension request and provided an additional seven hours did not foreclose the possibility that plaintiff would confront technical challenges in filing its voluminous responses on the evening of the 11:59 pm deadline.

Because plaintiff encountered technical challenges on the evening of the deadline, and because Commerce was unavailable to respond to plaintiff's extension request, Commerce's refusal to apply the practice to plaintiff's circumstances was an abuse of discretion.

Defendant relies on cases in which this Court and the Federal Circuit sustained decisions of Commerce to reject untimely questionnaire responses and apply to that respondent AFA.  The court considers each in turn and concludes that none is apposite. In *Bebitz Flanges Works Private Ltd. v. United States*, 44 CIT __, 433 F. Supp. 3d 1297 (2020), the respondent submitted a deficient initial questionnaire response, which required that Commerce issue a supplemental questionnaire.  After Commerce granted multiple extension requests, plaintiff filed a final extension request 20 minutes before the 5:00 pm deadline, and then failed to file the supplemental response before 8:30 am on the following business day.  *Id.* at __, 433 F. Supp. 3d at 1301-02.  In *Bebitz Flanges Works Private Ltd. v. United States*, 44 CIT __, 433 F. Supp. 3d 1309 (2020), the Court sustained Commerce's rejection of a supplemental response submitted four hours after the deadline.  However, there, the Court noted that plaintiff "had nearly five months from

the issuance of the original questionnaire to provide the information requested by Commerce" and failed to provide useable information after more than eight questionnaires. *Id.* at __, 433 F. Supp. 3d at 1326-27 ("Bebitz did not fail just once or even twice to fulfill [Commerce's] requests; rather, Bebitz failed to provide usable information to Commerce after more than eight questionnaires, each with extended deadlines, representing multiple opportunities for Bebitz to provide timely and accurate information."). Moreover, in contrast with the instant case, Commerce provided "extensive reasons for its full denials" of plaintiff's extension requests. *Id.* at __, 433 F. Supp. 3d at 1325. In addition, and also in contrast with the instant circumvention inquiries, the Court noted that "Congress has imposed strict statutory deadlines upon Commerce in AD investigations." *Id.* As a consequence, the Court concluded that "Commerce struck the proper balance between finality and accuracy" in denying the extension requests, rejecting the untimely submissions and applying to the respondent AFA. *Id.* at __, 433 F. Supp. 3d at 1326.

In *Tau-Ken Temir LLP v. United States*, 46 CIT __, __, 587 F. Supp. 3d 1346, 1355 (2022), plaintiff failed to file a "full written explanation" and instead submitted a "5-line barebones extension request." Moreover, plaintiff did not file its responses prior to 8:30 am the following business day after Commerce did not respond to plaintiff's extension request filed minutes before the deadline. *Id.* at __, 587 F. Supp. 3d at 1350-51.

In *Dongtai Peak*, 777 F.3d at 1350, the Federal Circuit concluded that Commerce properly exercised its discretion in rejecting plaintiff's extension requests and supplemental questionnaire response. There, the Federal Circuit relied on a previous

decision of that court and stated that "[i]t is fully within Commerce's discretion to 'set and enforce deadlines' and [the] court 'cannot set aside application of a proper administrative procedure because it believes that properly excluded evidence would yield a more accurate result if the evidence were considered."  *Id.* at 1352 (quoting *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 760-61 (Fed. Cir. 2012)). However, in *Dongtai Peak*, the facts recited by the court suggest a circumstance highly distinct from the instant case:  There, plaintiff failed to file a timely extension request and failed to "demonstrate why the company was unable to file timely its extension request" until two days *after* the deadline for submission.  *Id.* at 1351.  Moreover, in that case plaintiff submitted the supplemental questionnaire response *10 days* after the deadline. *Id.* at 1347.

In contrast to the cases on which defendant relies, in the instant case plaintiff submitted timely extension requests with a "full written explanation" of the numerous difficulties that plaintiff faced in submitting by Commerce's deadline the initial questionnaire responses across the three separate circumvention inquiries.  *Tau-Ken Temir LLP*, 46 CIT at __, 587 F. Supp. 3d at 1355.  Moreover, plaintiff sought to extend the deadline to respond to Commerce's initial questionnaires — which represented all of plaintiff's information on the record — and was proactive and diligent in communicating to Commerce via phone conversations and extension requests the challenges that it faced in complying with Commerce's deadlines — challenges that Commerce ignored. Finally, plaintiff filed its questionnaire responses prior to 8:30 am on the following workday — prior to the deadline created by operation of the regulatory preamble's

automatic extension. For those reasons, the cases that defendant cites to support Commerce's decision to reject plaintiff's questionnaire responses are inapposite.[15]

The court is acutely mindful of the time pressures and resource constraints under which Commerce typically operates. The court is further mindful that under many possibly even most circumstances, even small delays after Commerce has granted an extension can impede the timely and thorough completion of an administrative proceeding. For those reasons, "Commerce has 'broad discretion [over] the establishment and enforcement of time limits.'" *Maverick Tube Corp. v. United States*, 39 CIT __, __, 107 F. Supp. 3d 1318, 1331 (2015) (quoting *Reiner Brach GmbH*, 26 CIT at 559, 206 F. Supp. 2d at 1334). However, the court regards the facts and circumstances of this set of circumvention inquiries to be distinct from a normal circumstance, and for the reasons set out above, to constitute an instance in which Commerce abused its discretion.

In sum, Commerce's decision to reject plaintiff's questionnaire responses and apply to plaintiff AFA to exclude plaintiff from the certification process was an abuse of discretion.

---

[15] Defendant cites to other cases in support of its position, and these too are inapposite. *Ferrostaal Metals Gmbh v. United States*, 45 CIT __, 518 F. Supp. 3d 1357 (2021) (sustaining Commerce's decision to reject a submission filed nine days after the deadline without explanation for the delay and where plaintiffs did not even request an extension); *Yantai Timken Co. v. United States*, 31 CIT 1741, 521 F. Supp. 2d 1356 (2007) (sustaining Commerce's rejection of new factual information filed 10 months after the deadline); *Maverick Tube Corp. v. United States*, 39 CIT __, 107 F. Supp. 3d 1318 (2015) (sustaining Commerce's rejection of petitioner's untimely extension request and untimely filed submission that "failed to comply with Commerce's regulations").

**CONCLUSION**

For the reasons provided above, it is hereby

**ORDERED** that plaintiff's Rule 56.2 Motion for Judgment on the Agency Record (Apr. 25, 2024), ECF No. 41, is granted; it is further

**ORDERED** that on remand Commerce is to accept plaintiff's initial questionnaire responses into the record of this proceeding; it is further

**ORDERED** that Commerce, upon consideration of the questionnaire responses, shall reconsider its determination regarding plaintiff's ability to participate in the certification process established for this case; it is further

**ORDERED** that Commerce, within 45 days from the issuance of this Opinion and Order, shall submit a redetermination upon remand that complies with this Opinion and Order; it is further

**ORDERED** that should the parties consider the allotted 45 days insufficient for Commerce to submit its remand redetermination, parties shall notify the court within seven days of this Opinion and Order of the number of days absolutely necessary to complete the remand redetermination; it is further

**ORDERED** that plaintiff and defendant-intervenors shall have 20 days from the filing of the remand redetermination in which to submit comments to the court; and it is further

**ORDERED** that should plaintiff or defendant-intervenors submit comments, defendant shall have 10 days from the date of the filing of the last comment to submit a response.

/s/  Timothy M. Reif
Timothy M. Reif, Judge

Dated: January 27, 2025
   New York, New York